# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLIED WORLD INSURANCE COMPANY | : CIVIL ACTION |
| v. | : NO. 17-3027 |
| PERDOMO INDUSTRIAL, LLC, *et al* | : |

## MEMORANDUM

**KEARNEY, J.**                                                                            **September 25, 2018**

As sophisticated contractors and their sureties anticipate, we enforce specific terms of an indemnity agreement for the amount shown to be owed. When the surety company sues for recovery but the contractors elect not to answer a motion for summary judgment, we review the underlying records and accept the undisputed facts. After this review, we grant the surety company's motion for summary judgment. We enter judgment for the sum the contractor agreed to pay in an indemnity agreement.

### I. Undisputed facts.[1]

Allied World issues payment and performance bonds.[2] On April 3, 2015, Allied World signed an Indemnity Agreement with Perdomo Industrial, LLC listed as the Principal, and Perdomo Industrial and Orlando Perdomo, Jr. listed as Indemnitors.[3] The parties agreed Perdomo Industrial would "be required to obtain surety bonds" for its construction business.[4] Allied World "agreed to execute Bonds or cause Bonds to be executed and, in the same reliance, it may in the future execute or cause to be executed, one or more other Bonds on behalf of [Perdomo Industrial]."[5] Mr. Perdomo and Perdomo Industrial, as Indemnitors, agreed to "save harmless and indemnify Allied World for any and all liability, loss, damages, costs, counsel and

attorney fees incurred by Allied World by reason or in consequence of having issued any bonds on behalf of Perdomo Industrial."[6] Mr. Perdomo signed the Indemnity Agreement on behalf of Perdomo Industrial and in his personal capacity.[7]

The Indemnity Agreement contains two obligations at issue: Section 3.2 regarding indemnity obligations, and Section 4.3 regarding payments:

> [Mr. Perdomo and Perdomo Industrial] hereby agree[] and covenant[] with [Allied World] as follows:
>
> 3.2 INDEMNITY—at all times jointly and severally to exonerate, indemnify and keep indemnified, and to defend and to hold [Allied World] harmless from and against any and all Loss . . . [Mr. Perdomo's and Perdomo Industrial's] joint and several obligations to exonerate, indemnify, and keep indemnified, and to defend and hold harmless [Allied World] from any and all liability for any and all Loss includes but is not limited to: liability, loss, costs, damage and expense of whatsoever kind or nature (including but not limited to interest, court costs, attorney fees . . . ).
>
> 4.3 PAYMENTS – in the event of any Loss payment by [Allied World], [Mr. Perdomo and Perdomo Industrial] further agree that in any accounting between [Allied World] and [Mr. Perdomo and Perdomo Industrial], [Allied World] will be entitled to charge for any and all disbursements made by it in good faith concerning the matters contemplated in this Agreement under the belief that it is, or was, or might be liable for the sums and amounts so disbursed or that it was necessary and expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments [Allied World] made will be prima facie evidence of the fact and amount of [Allied World]'s liability.[8]

"Loss" is defined in the Indemnity Agreement as:

> [T]he underlying dollar amount of all Claims and of all damages, expenses, costs, professional and consulting fees . . . interest and expense of every nature . . . which [Allied World] sustains or incurs or becomes liable for by reason of (a) being requested to execute or procure the execution of any Bond; or (b) having executed or procured the execution of any Bond; or (c) the administration of any amendment, waiver or supplement to any Bond; or (d) [Mr. Perdomo's and Perdomo Industrial's] failure to perform or comply with any of the covenants and conditions of this Agreement; or (e) enforcement of, attempted enforcement of, or preservation of rights under any Bond or this Agreement.[9]

2

### *Perdomo Industrial's subcontract with Hensel Phelps.*

On May 12, 2016, Perdomo Industrial and Hensel Phelps Construction entered into a subcontract for construction services on the "Freedom Plaza" project in Washington, D.C.[10] Allied World issued a performance bond on May 25 in the amount of $2,184,275.00 naming Perdomo Industrial as "Principal" and Hensel Phelps as "Obligee."[11] Allied World guaranteed Perdomo Industrial's performance on the subcontract.[12]

On December 16, 2016, Hensel Phelps notified Perdomo Industrial of a default on its obligations under the subcontract.[13] Hensel Phelps stated Perdomo Industrial "failed or [was] unable, or with reasonable probability [was] unable, to comply with numerous material provisions of the Subcontract."[14] Hensel Phelps cited Perdomo Industrial's: (1) failure to perform demolition work in accordance with the project schedule, (2) failure to perform work "in a safe and workmanlike manner," and, (3) failure to "implement and maintain the necessary measures to prevent damage to the structures adjacent to Perdomo Industrial's demolition work and keep the public and other employees safe."[15] On December 19, Hensel Phelps issued a formal Notice of Termination to Mr. Perdomo and Perdomo Industrial for failure to remedy the defaults.[16] In a separate letter to Allied World the same day, Hensel Phelps demanded Allied World's performance under the bond.[17]

### *The Hensel Phelps arbitration.*

On February 27, 2017, Hensel Phelps filed for arbitration before the American Arbitration Association against Perdomo Industrial and Allied World seeking damages under the subcontract and the performance bond.[18] On February 22, Perdomo Industrial withdrew its counsel from the Arbitration.[19] Mr. Perdomo failed to appear at his scheduled deposition and Perdomo Industrial did not participate in the arbitration hearing after notice.[20] Mr. Perdomo

3

testified Allied World did not prevent him from attending his arbitration deposition.[21] He also testified he—not Allied World—decided to withdraw Perdomo Industrial's counsel from the arbitration.[22]

The Arbitration Panel found Allied World and Perdomo Industrial jointly and severally liable to Hensel Phelps for $2,958,309.71.[23] The Panel also found Perdomo Industrial separately liable to Hensel Phelps for $7,917,666.30.[24] The Panel directed Allied World to reimburse $97,785.34 to Hensel Phelps, representing Allied World's portion of the arbitration fees, expenses, and arbitrators' compensation.[25] In total, Allied World will pay Hensel Phelps $3,056,095.06 to resolve claims under the subcontract and bond issued to Mr. Perdomo and Perdomo Industrial.[26]

Allied World swears it has paid, or is paying, Hensel Phelps the total amount of $3,056,095.05, representing the recoverable damages awarded against Allied World in the Arbitration.[27] Allied World also swears "[a]s of September 4, 2018, as a result of having issued performance and payment bonds to Perdomo Industrial, LLC, Allied World has incurred, and continues to incur, losses, costs, attorneys fees, and expenses in the amount of $4,010,344.92."[28] Allied World provided a spreadsheet showing payments it made, and payments due, under the Perdomo performance bond.[29] The spreadsheet lists nine parties claiming money under the Perdomo bond, including Hensel Phelps.[30] The spreadsheet shows (1) a "Gross Loss & ALAE Paid (USD)" totaling $954,249.87 for all claimants, (2) a "Loss Being Paid (USD)" totaling $3,056,095.05, and (3) "Gross Loss and Loss to be Paid (USD)" totaling $4,010,344.92.[31]

### *Allied World sues Mr. Perdomo and Perdomo Industrial.*

Allied World sues Mr. Perdomo and Perdomo Industrial for indemnification and reimbursement (Count I), common law indemnification (Count II), specific performance (Count

4

III), exoneration (Count IV), and common law exoneration (Count V).[32] Allied World now moves for summary judgment against Mr. Perdomo and Perdomo Industrial, arguing solely for indemnification under the Indemnity Agreement. Mr. Perdomo and Perdomo Industrial have not responded to Allied World's motion. As we find Allied World is entitled to summary judgment on its indemnification and reimbursement claim under the terms of the Indemnity Agreement and our judgment provides Allied World with complete relief, the remaining claims are dismissed as moot.

**II.    Analysis[33]**

Allied World argues it is entitled to summary judgment because: (1) the Indemnity Agreement controls the parties' rights and obligations in this dispute; (2) Allied World has paid for losses and intends to pay for remaining losses incurred under the Perdomo performance bond, such payments are prima facie evidence of Allied World's liability under the Indemnity Agreement; and, (3) Mr. Perdomo and Perdomo Industrial cannot escape liability under the Indemnity Agreement because they fail to raise a genuine issue of fact as to whether Allied World acted in bad faith when it made payments under the performance bond.

Allied World argues the Indemnity Agreement, rather than the common law principles of indemnity, governs the parties' rights and obligations. We agree. "[R]esort to implied indemnity principles is improper when an express indemnification contract exists; when there is such an express contract, a surety is entitled to stand upon the letter of the contract."[34] Allied World undisputedly entered into the Indemnity Agreement with Mr. Perdomo and Perdomo Industrial on April 3, 2015.[35] Mr. Perdomo and Perdomo Industrial agreed to "exonerate, indemnify and keep indemnified, and to defend and to hold [Allied World] harmless from and against any and all liability for any and all Loss[.]"[36] The Indemnity Agreement defines "Loss" as the

5

"underlying dollar amount of all Claims and of all damages, expenses, costs, professional and consulting fees . . . which [Allied World] . . . [became] liable for by reason of being requested to execute or procure the execution of [the] Bond."[37] The Indemnity Agreement controls this dispute.

Allied World next argues the "prima facie" clause in the Indemnity Agreement allows Allied World to adduce evidence of payments made on behalf of Perdomo Industrial under the bond; once Allied World submits such evidence, the burden shifts to Mr. Perdomo and Perdomo Industrial—the Indemnitors—to show those payments are not recoverable under the Indemnity Agreement. We agree. Our court of appeals instructs the "'prima facie evidence' clause in an indemnity agreement shifts to the indemnitor the burden of proving that the costs incurred were not recoverable."[38] In the context of summary judgment, "once a surety has submitted the required documentation of payments, the burden under Rule 56 shifts to the principal to prove the existence of a genuine issue of material fact for trial."[39] Under Section 4.3 of the Indemnity Agreement:

> [I]n the event of any Loss payment by [Allied World], [Mr. Perdomo and Perdomo Industrial] further agree that in any accounting between [Allied World] and [Mr. Perdomo and Perdomo Industrial], [Allied World] will be entitled to charges for any and all disbursements made by it in good faith concerning the matters contemplated in this Agreement under the belief that it is, or was, or might be liable for the sums and amounts so disbursed or that it was necessary and expedient to make such disbursements, whether or not such liability, necessity or expediency existed; **and that the vouchers or other evidence of any such payments [Allied World] made will be prima facie evidence of the fact and amount of [Allied World's] liability.**[40]

"[S]ubmission of evidence of payments in the form of vouchers or affidavits shall be prima facie evidence of the fact and amount of liability."[41]

Allied World argues the Arbitration Award and claims made by Hensel Phelps and other claimants under the performance bond are "Losses" under the Indemnity Agreement as they

6

represent the "underlying dollar amount of all Claims and of all damages, expenses, costs, professional and consulting fees . . . which [Allied World] . . . [became] liable for by reason of being requested to execute or procure the execution of [the] Bond."[42] As "prima facie evidence" of "Loss payments," Allied World attaches the August 21, 2018 Arbitration Award.[43] The Arbitration Panel held Allied World and Perdomo Industrial jointly and severally liable to Hensel Phelps for $2,958,309.71.[44] The Panel also ordered Allied World to pay $97,785.34 representing administrative fees and expenses, and compensation for the Panel.[45] Allied World owes Hensel Phelps a total of $3,056,095.05 under the Arbitration Award.

Allied World attaches an affidavit from James A. Keating, Assistant Vice President of Surety Claims, swearing Allied World intends to pay Hensel Phelps $3,056,095.05 from the Arbitration, representing the damages calculation, the administrative fees and expenses, and the Panel's compensation.[46] Allied World may submit affidavits as "other evidence" of payments.[47] Mr. Keating also swears "[a]s of September 4, 2018, as a result of having issued performance and payment bonds to Perdomo Industrial, LLC, Allied World has incurred, and continues to incur, losses, costs, attorneys fees, and expenses in the amount of $4,010,344.92."[48] Allied attaches a spreadsheet showing payments made and payments due under the Perdomo performance bond.[49] Allied lists nine claimants, including Hensel Phelps.[50] The spreadsheet shows (1) a "Gross Loss & ALAE Paid (USD)" totaling $954,249.87, (2) a "Loss Being Paid (USD)" totaling $3,056,095.05, and (3) "Gross Loss and Loss to be Paid (USD)" totaling $4,010,344.92.[51]

As Allied World has put forth prima facie evidence of "Loss payments" under Section 4.3 of Indemnity Agreement, the burden shifts to Mr. Perdomo and Perdomo Industrial to show

7

the costs Allied World incurred are not recoverable under the Indemnity Agreement or raise a genuine issue of material fact for trial. They have elected not to do so.

Allied World next argues because it has put forth prima facie evidence of "Loss payment," the "good faith" clause in the Indemnity Agreement allows Mr. Perdomo and Perdomo Industrial to escape liability only upon a showing of "bad faith." "[W]hat an indemnitor must demonstrate to escape liability . . . depends upon the precise language used in the agreement."[52] We look to the Indemnity Agreement. Allied World is entitled to recovery from Mr. Perdomo and Perdomo Industrial for payments made "in *good faith* concerning the matters contemplated in this Agreement under the belief that it is, or was, or might be liable for the sums and amounts so disbursed or that it was necessary and expedient to make such disbursements, whether or not such liability, necessity or expediency existed[.]"[53] Courts "have routinely . . . upheld" good faith clauses like the one in the Indemnity Agreement.[54] A court in this district upheld a "good faith" clause with language nearly identical to the language in this Indemnity Agreement.[55]

As the Indemnity Agreement entitles Allied World to recovery for payments made in "good faith," Mr. Perdomo and Perdomo Industrial must establish a genuine issue of fact as to whether Allied World made payments in "bad faith" or made fraudulent payments as surety under the performance bond.[56] The parties have not shown the Indemnity Agreement contains its own "good faith" standard.

In such instances, we apply the common law "good faith" standard.[57] To show "bad faith," Mr. Perdomo and Perdomo Industrial must show "improper motive" or "dishonest purpose."[58] "Bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity."[59] "Bad faith is

8

more than 'a lack of diligence or negligence,' and 'even gross negligence cannot support a finding of bad faith.'"[60]

Mr. Perdomo and Perdomo Industrial have elected not to adduce this evidence. They fail to raise a genuine issue of fact concerning whether Allied World acted in bad faith or made fraudulent payments under the Perdomo performance bond. Mr. Perdomo and Perdomo Industrial cannot defeat summary judgment.

## III. Conclusion

Viewing the facts and all reasonable inferences in the light most favorable to Mr. Perdomo and Perdomo Industrial, there are no genuine issues of material fact and Allied World is entitled to judgment as a matter of law. Allied World establishes its claim for indemnification and reimbursement under the Indemnity Agreement. Mr. Perdomo and Perdomo Industrial fail to raise a genuinely disputed issue of material fact precluding summary judgment. In the accompanying Order, we enter judgment of $4,010,344.92 in favor of Allied World on its claim for indemnification and reimbursement. As we afford Allied World complete relief, we dismiss the remaining claims in Allied World's Amended Complaint.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. Allied World filed its SUMF at ECF Doc. No. 36-6 and its appendix at ECF Doc. Nos. 36-2 through 36-5. References to exhibits in the appendix shall be referred to by Bates number, for example, "Appx. P1." Allied World filed its brief in support of the motion at ECF Doc. No. 36-1. Perdomo Industrial and Mr. Perdomo have elected not to respond to Allied World's motion.

[2] SUMF at ¶ 1.

[3] Appx. P2.

[4] *Id.*

[5] *Id.*

[6] SUMF at ¶ 4.

[7] *Id.* at ¶ 23.

[8] ECF Doc. No. 36-1 at pp. 5-6 (quoting Appx. P3, P5).

[9] ECF Doc. No. 36-1 at p. 5 (quoting Appx. P3).

[10] Appx. P181.

[11] SUMF at ¶ 5; Appx. P181.

[12] SUMF at ¶ 6.

[13] *Id.* at ¶ 7.

[14] Appx. P160.

[15] *Id.*

[16] *Id.* at P165.

[17] SUMF at ¶ 8; Appx. P164.

[18] SUMF at ¶ 9.

[19] *Id.* at ¶ 10; Appx. P172.

[20] SUMF at ¶ 11-12; Appx. P172.

[21] SUMF at ¶ 13.

[22] *Id.* at ¶ 14.

[23] *Id.* at ¶ 17.

[24] Appx. P179.

[25] SUMF at ¶ 18.

[26] *Id.* at ¶ 21.

[27] Appx. P156.

[28] *Id.*

[29] *Id.* at P158.

[30] *Id.*

[31] *Id.*

[32] ECF Doc. No. 5 (Allied World's Amended Complaint).

[33] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their care for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-23).

[34] *U.S. Fid. & Guar. Co. v. Feibus*, 15 F. Supp. 2d 579, 583 (M.D. Pa. 1998); *see also Travelers Cas. & Sur. Co. of Am. v. Alambry Funding Inc.*, No. 11-4758, 2011 WL 6133885, at *4 (E.D. Pa. Dec. 8, 2011); *Volkswagen of Am., Inc. v. Bob Montgomery, Inc.*, No. 82-3598, 1985 WL 2824, at *3 (E.D. Pa. Sept. 25, 1985), *aff'd*, 791 F.2d 923 (3d Cir. 1986) ("[T]here is an express contract of indemnity . . . which, unless demonstrated to the contrary, supersedes common law principles.").

[35] Appx. P2.

[36] *Id.* at P3.

[37] *Id.*

[38] *Fallon Elec. Co. v. Cincinnati Ins. Co.*, 121 F.3d 125, 129 (3d Cir. 1997).

[39] *Feibus*, 15 F. Supp. 2d at 582; *Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins.*, No. 83-5733, 1989 WL 55388, at *3 (E.D. Pa. May 23, 1989).

[40] Appx. P5.

[41] *Feibus*, 15 F. Supp. 2d at 582; *Curtis T. Bedwell & Sons, Inc.*, 1989 WL 55388, at *3 (granting summary judgment based on "affidavits and supporting documentation," which constituted "prima facie evidence of the fact and amount of the liability").

[42] ECF Doc. No. 36-1 at p. 5 (quoting Appx. P3).

[43] Appx. P171.

[44] *Id.* at P178.

[45] *Id.* at P179.

[46] *Id.* at P156.

[47] *Curtis T. Bedwell & Sons, Inc.*, 1989 WL 55388, at *3 (granting summary judgment based on "affidavits and supporting documentation," which constituted "prima facie evidence of the fact and amount of the liability"); *U.S. Fid. & Guar. Co. v. Bilt-Rite Contractors, Inc.*, No. 04-1505, 2005 WL 1168374, at *3 (E.D. Pa. May 16, 2005) (granting summary judgment with prima facie evidence of affidavits and expense sheets).

[48] Appx. P156.

[49] *Id.* at P158.

[50] *Id.*

[51] *Id.*

[52] *Fallon Elec. Co.*, 121 F.3d at 129.

[53] Appx. P5.

[54] *Feibus*, 15 F. Supp. 2d at 585; *Great Am. Ins. Co. v. Stephens*, No. 04-3642, 2005 WL 2373866, at *6 (E.D. Pa. Sept. 27, 2005).

[55] *See Bilt-Rite Contractors, Inc.*, 2005 WL 1168374, at *1 ("[T]he SURETY shall be entitled to charge for any and all disbursements made by it in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed[.]").

[56] *Int'l Fid. Ins. Co. v. United Const., Inc.*, No. 91-2361, 1992 WL 46878, at *2 (E.D. Pa. Mar. 4, 1992) ("Courts have recognized one exception to the enforcement of the indemnitor's liability for the surety's disbursements and expenses and that is bad faith or fraudulent payment.").

[57] *See, e.g., Mountbatten Sur. Co. v. Jenkins*, No. 02-8421, 2004 WL 2297405, at *5 (E.D. Pa. Oct. 13, 2004); *Bilt-Rite Contractors, Inc.*, 2005 WL 1168374, at *4 n.9; *RLI Ins. Co. v. Bennett Composites, Inc.*, No. 04-272, 2005 WL 2902496, at *6 (E.D. Pa. Nov. 2, 2005) ("The common law standard of bad faith or fraudulent payment is applied by the courts when, as in this case, there is no good faith standard set forth in the indemnity agreement.").

[58] *Mountbatten Sur. Co.*, 2004 WL 2297405, at *5.

[59] *Feibus*, 15 F. Supp. 2d at 585; *Bilt-Rite Contractors, Inc.*, 2005 WL 1168374, at *4 n.9.

[60] *RLI Ins. Co.*, 2005 WL 2902496, at *7 (quoting *Feibus*, 15 F. Supp. 2d at 585).